James MCCABE, Derivatively On Behalf of Fidelity National Financial, Inc., Plaintiff,

v.

William P. FOLEY, II, et al., Defendants,

and

Fidelity National Financial, Inc., a Delaware corporation, Nominal Defendant

No. 3:05 CV 149 J 25TEM.

United States District Court, M.D. Florida, Jacksonville Division.

April 4, 2006.

---

Brian Robbins, Jeffrey P. Fink, Robbins Umeda & Fink, LLP, San Diego, CA, Geddes Dowling Anderson, Jr., Niels P. Murphy, Murphy & Anderson, P.A., Jacksonville, FL, for Plaintiff.

A. Graham Allen, Rogers, Towers, P.A., Jacksonville, FL, Andrew Baum, Mark G. Krum, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, Los Angeles, CA, for Defendants.

## ORDER

MORRIS, District Judge.

Before the Court are Nominal Defendant Fidelity National Financial, Inc.'s (Fidelity) Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 23), Plaintiff's response thereto (Dkt. 25), Individual Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or in the alternative Motion for Summary Judgment (Dkt. 24), and Plaintiff's response thereto (Dkt. 26).[1]

### I.

Plaintiff, a shareholder of Fidelity, brings this verified shareholder derivative complaint on behalf of the company against certain officers and directors for breaches of fiduciary duty, abuse of control, gross mismanagement, waste of cor-

---

1. Nominal Defendant Fidelity filed a Motion to Dismiss Plaintiff's first Complaint (Dkt. 12) as did the Individual Defendants (Dkt. 13). In light of Plaintiff's Amended Complaint (Dkt. 21), those motions are denied as moot.

porate assets and unjust enrichment which he claims has caused substantial damages to Fidelity's reputation and goodwill. Fidelity is a title insurance and diversified real estate information services and solutions company. (Am.Compl.¶ 5.) Plaintiff is an owner and holder of Fidelity common stock. (Am.Compl.¶ 10.) Named Defendants (Individual Defendants) were officers and directors of Fidelity during the Relevant Period.[2] Plaintiff claims that the Individual Defendants were engaged in two types of schemes: 1) engaging in illegal insurance transactions designed to obtain excessive premiums, and 2) paying realtors, lenders and developers illegal rebates on phony reinsurances while simultaneously receiving excessive premiums from its title insurances policies. These schemes allegedly resulted in artificially inflated stock prices, which Individual Defendants benefited from by selling over 55 million of their personally held shares. (Am.Compl.¶¶ 6–9.)

Fidelity moves to dismiss the verified amended shareholder derivative complaint because it fails to satisfy the heightened pleading standard for alleging demand futility. The Individual Defendants move to dismiss the complaint, or in the alternative, move for summary judgment arguing that the complaint fails to plead facts to overcome the business judgment rule, and because the complaint fails to properly plead the elements of the claims it purports to make.

## II.

■ As an initial matter, this cause of action belongs to the corporation, not the individual shareholder, and thus before bringing suit, the Plaintiff must make a demand on the corporation's board of directors to bring a suit on behalf of the corporation. Fed.R.Civ.P. 23.1; *Kamen v.*

*Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). The decision to bring a lawsuit is a business one and a corporation's board of directors has the primary responsibility of conducting the business affairs for the corporation. *Id.* at 101, 111 S.Ct. 1711. A pre-suit demand gives the corporate directors and opportunity to correct any internal abuses without a lawsuit, make decisions that are in the best interest of the company, and thereby conserving company and judicial resources. *Stepak v. Addison,* 20 F.3d 398, 402 (11th Cir.1994). The presumption is that the directors will be "faithful to their fiduciary duties" and thus the burden is on the plaintiff in a derivative action to overcome that presumption. *Beam v. Stewart,* 845 A.2d 1040, 1048–49 (Del.2004).

■ The pre-suit demand may be excused by a proper pleading of demand futility. *Kamen,* 500 U.S. at 96, 111 S.Ct. 1711. Under Rule 23.1, when a shareholder plaintiff asserts that a demand was not made on the board because it would have been futile, the plaintiff must plead "with particularity" why demand was not made. Fed.R.Civ.P. 23.1. This rule is an exception to the traditional and less stringent requirement of notice pleadings, normally required to withstand a Rule 12(b)(6) motion to dismiss. *Stepak,* 20 F.3d at 402. The adequacy of the pleading is determined by the law of the state of incorporation, here Delaware. *Id.*

■ Under Delaware law, the complaint must sufficiently set forth "particularized factual allegations" establishing that a majority of the board of directors cannot properly exercise its sensible business judgment to proceed with the claim. *Aronson v. Lewis,* 473 A.2d 805, 814 (Del.

---

**2.** The Relevant Period spans from October    1999 to the present. (Am.Compl.¶ 1.)

1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del.2000). Demand will be excused if, under the particularized facts alleged in satisfaction of Rule 23.1, a reasonable doubt exists that a majority of the directors are disinterested and independent. *Id.* A director is "considered interested where he or she will receive a personal financial benefit from a transaction this is not equally shared by the stockholders" or will suffer a detrimental impact from the challenged transaction. *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). Directors lack independence when they are "beholden to [an] interested director or so under the influence of [an interested director] that their discretion would be sterilized." *Id.* Here, the initial complaint was filed on February 11, 2005. On that date, the board consisted of eleven members. Therefore, Plaintiff need only show that six of the directors were interested or lacked independence in order to plead demand futility.

## A. Interested Directors

### 1. Allegations in the Complaint

On February 11, 2005, Fidelity's Board of Directors had eleven members. Nine of these members were non-managements Outside Directors: Terry Christensen, William Imparato, Donald Koll, William Lyon, Cary Thompson, Daniel Lane, John Farrell, Jr., Philip Heasley, and Willie Davis. Two members were Inside Directors: William Foley, II, the Chairman of the Board and Chief Executive Officer, and Frank Willey, Vice Chairman of the Board. (Am.Compl.¶¶ 27, 116.)[3] Plaintiff

must show that four of the nine Outside Directors lack sufficient independence in order to show demand futility.[4] Plaintiff makes the following allegation with respect to each of the Outside Directors that were on the Board on February 11, 2005:

> Because of [named director's] position, he knew the adverse non-public information about the business of Fidelity, specifically, its paying illegal and concealed 'contingent commissions' pursuant to illegal 'contingent commission agreements' and illegal kickbacks to realtors, lenders and developers as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, [named director] participated in the issuance of false and/or misleading press releases and SEC filings.

(Am.Compl.¶¶ 16–26.) Additionally, Plaintiff makes the following director-specific allegations:

1. Terry Christensen has been an outside director of Fidelity since 2002. (Am. Compl.¶ 16.) Additionally, Christensen is a member of the Compensation Committee and the Governance and Nominating Committee. (Am.Compl.¶ 116.)

2. William Imparato engaged in insider trading selling 29,078 shares of Fidelity stock for proceeds of $759,231.40 repre-

---

**3.** While Fidelity does not concede that Plaintiff has made a sufficient showing of lack of independence as to Inside Directors Foley and Willey, Fidelity makes no argument refuting that allegation. Therefore, for purposes of this motion only, the Court will consider the Inside Directors to be "interested" and/or to lack sufficient independence.

**4.** Because the Board contains eleven members. Plaintiff must make a proper showing as to six. As the Court is considering the Inside Directors to be interested. Plaintiff must only allege that four Outside Directors are interested or lack independence.

senting 23% of his holdings. Imparato made no sales in the five years prior to the Relevant period or since August 8, 2003. Additionally, Imparato is a member of the Audit Committee. (Am.Compl.¶¶ 17, 116.)

3. Donald Koll engaged in insider trading selling 38,924 shares of Fidelity stock for proceeds over $1 million during the Relevant Period representing 21% of his holdings. Koll made no sales of stock prior to the Relevant Period or since February 28, 2003. Additionally Koll is a member of the Governance and Nominating Committee. (Am.Compl.¶ 116.)

4. William Lyon is and has been a director of Fidelity at all relevant times. (Am.Compl.¶ 19.)

5. Cary Thompson engaged in insider trading selling 72,510 shares of Fidelity stock for proceeds over $2 million during the Relevant Period representing 62% of his holdings. (Am.Compl.¶ 116) Thompson made no sales during the five years prior to the Relevant period nor since January 7, 2003. Additionally, Thompson is a member of the Compensation Committee. (Am.Compl.¶ 116.)

6. Daniel Lane engaged in insider trading selling 82,292 shares of Fidelity stock for proceeds over $2.7 million during the relevant period representing 31% of his holdings. Lane made no sales during the five years prior to the Relevant Period or since January 14, 2003. Additionally, Lane is a member of the Compensation Committee and the Governance and Nominating Committee. (Am.Compl.¶ 16.)

7. John Farrell is and has been a director of Fidelity since 2000. (Am. Compl.¶ 22.) Additionally, Farrell is a member of the Audit Committee. (Am. Compl.¶ 116.)

8. Philip Heasley engaged in insider trading selling 20,418 shares of Fidelity stock for proceeds of $729,943.50 during the Relevant Period, representing 39% of his holdings. Heasley has made no sales of stock since April 8, 2003. Additionally, Heasley is a member of the Audit Committee. (Am.Compl.¶ 116.)

9. Willie Davis is and has been a director of Fidelity since December 2003. Additionally, Davis is a member of the Governance and Nominating Committee. (Am.Compl.¶ 24.)

Plaintiff makes the following allegations with regards to all members of the Audit Committee. The Audit Committee is responsible for reviewing the annual audited financial statements and quarterly financial statements with management and the independent auditor. (Am.Compl.¶ 116.) The Committee, along with management, inside and outside auditors, and any other professionals deemed appropriate, is also responsible for reviewing earnings press releases, the effectiveness of the company's disclosure controls and procedures, and any legal matters. Allegedly, the Audit Committee met twice in Fiscal Year (FY) 1999, four times in FY 2000 and 2001, six times in FY 2003, ten times in FY 2003 and twenty-nine times in FY 2004. Plaintiff claims that the members of this committee, Farrell, Imparato and Heasley, breached their duties by allowing improper financials, and thus demand on them would be futile. (Am.Compl.¶ 116.)

Plaintiff makes the following allegations regarding all members of the Compensation Committee. The Compensation Committee is responsible for approving compensations plans based on revenue. (Am. Compl.¶ 116.) The Compensation Committee should have known that Fidelity was unduly compensating its officers and thereby permitted or condoned the unlawful practices described in the complaint. Since a portion of Fidelity's revenue was inflated due to illegally paid contingent commissions and kickbacks to builders,

realtors and lenders, the Compensation Committee should not have approved the Officer Defendants' incentive compensation. (Am.Compl.¶ 116.) Thompson, Lane, Christiansen, Imparato and Davis are members of this Committee. (Am. Compl.¶ 116.)

Plaintiff makes the following allegations regarding all members of the Governance and Nominating Committee. The Governance and Nominating Committee is responsible for recommending nominees for the Board, developing and recommending to the Board corporate governance principles, and establishing and overseeing the Board's criteria for selection and oversight of the Board and management. (Am. Compl.¶ 116.) Before merging in FY 2004, the Nominating Committee met once in FY 2001, FY 2002 and FY 2003, and the Governance Committee met twice in FY 2003 and once in FY 2004. The members of the Committee failed to fulfill their duties and responsibilities to lead the Board in its annual reviews of the Board's performance based on the misconduct alleged. (Am.Compl.¶ 116.) Due to this breach, Plaintiff claims demand would have been futile. Defendants Koll, Davis, Christensen and Lane are members of this Committee. (Am.Compl.¶ 116.)

## 2. Discussion

### A. Insider Trading

The Court finds that Plaintiff's allegations regarding the Outside Director's stock sales do not satisfy the demand futility pleading requirements. Mere allegations of insider trading do not make a director interested. *Guttman v. Huang*, 823 A.2d 492, 502 (Del.Ch.2003). Rather, a complaint must include particular facts sustaining the two key elements of insider trading, 1) knowledge of material, non-public information, and 2) sales that resulted from the receipt of that informa-

tion. *Id.* at 503–04. A well-pled complaint contains particularized allegations of fact detailing the precise roles that the directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the accounting irregularities. *Id.* at 503. Additionally, a complaint should state with particularity the nature of the material, non-public information. *Fink v. Komansky*, 2004 WL 2813166 at *6 (S.D.N.Y.). Finally, the timing of stock sales is much more important than the amount of stock sales in determining insider trading. A complaint should show inconsistency in trading patterns, and connect the non-public information to those sales. *Guttman*, 823 A.2d at 504.

Here, Plaintiff does not plead insider trading with sufficient particularity to sustain a shareholder derivative action. Plaintiff does make allegations regarding each Outside Director's committee obligations, but these allegations do not support an inference that the Outside Directors had access to material, non-public information on which they based sales of stock. Plaintiff's only allegation with respect to members of the Compensation Committee, was that they should have known the company was unduly compensating its officers. This allegation fails to properly plead what information the Committee members had access to, why the Committee members would have perceived an accounting irregularity, and does not state if and when they met. Similarly, Plaintiff fails to present any non-public information that members of the Governance and Nominating Committee had access to. Plaintiff also does not allege why the Committee members would have access to any accounting information, nor what information the members learned during their meetings. Therefore, the

Plaintiff has not plead with particularity that members of the Compensation Committee and the Governance and Nominating Committee had knowledge of any material, non-public information. While Plaintiff does make allegations regarding the general responsibilities of board members, these types of allegations do not satisfy the particularity requirement.

With respect to members of the Audit Committee, Plaintiff does allege that they were responsible for reviewing financial and accounting records. Despite concerns about the particularity requirement, the Court finds the Plaintiff had made a sufficient showing that the Audit Committee Board Members were in possession of material, non-public information.[5] However, only two Board Members, Heasley and Imparato served on the Audit Committee and sold stock. Therefore, at most, Plaintiff has shown that two Outside Directors satisfied the first prong of the insider trading analysis.

Plaintiff must also plead with particularity that the Director's sales of stock resulted from access to the material, non-public information. Plaintiff does make allegations regarding Imparato and Heasley's pattern of stock sales. Allegedly Imparato sold 23% of his holdings during the Relevant Period, made no sales in the five prior years, and has made no sales since February 28, 2003. (Am.Compl.¶ 116.) Heasley sold 39% of his holdings during the Relevant Period and has made no sales of stock since April 8, 2003. (Am.Compl.¶ 116.) The Court finds that these allegations alone are insufficient to properly plead that receipt of material, non-public information resulted in the stock sales. The Relevant Period begins in October 1999 and continues through the present day, a seven year time span. Plaintiff makes no allegations about the timing of the stock sales as they relate to the Audit Committee meetings and access to any non-public information. Additionally, Heasley did not became a director until 2000, and thus Plaintiff can not show his pattern of stock sale prior to the Relevant Period. Finally, though Imparato and Heasley have allegedly stopped selling stock, their final sales were done months apart, suggesting the sales were not part of some insider trading scheme made in conjunction with receipt of non-public information. Therefore, Plaintiff has failed to plead with particularity that any of Outside Directors are interested based on their insider trading.

### 2. Membership and Oversight

█ Plaintiff also alleges that Foley, Willey, Christensen, Imparato, Koll, Lyon, Thompson, Lane, Farrell, Heasley and Davis are interested because they served on the Board during the Relevant Period. Plaintiff claims that they each breached fiduciary duties by failing to prevent and correct improper financials. Plaintiff further claims that the Board can not exercise its proper business judgment because "its members are interested personally in the outcome as it is their actions that have subjected Fidelity to millions of dollars in liability for possible violations of applicable insurance laws." (Am.Compl.¶ 116.)

█ A claim against Directors for failure to exercise proper oversight is commonly referred to as a *Caremark* claim. In order to sustain a *Caremark* claim, Plaintiff must properly show "either (1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort

---

**5.** Plaintiff does not allege that Audit Committee members had knowledge that the financial reports were in error nor does he state with proper particularity what material, non-public information was contained in the financial reports.

to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of...". *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959, 971 (Del.Ch.1996). In order to successfully plead a *Caremark* claim, the complaint must allege, with sufficient particularity, a "sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information system exists." *Id.* These types of allegations could be that the company lacked an audit committee, or that the committee only met sporadically. *Guttman*, 823 A.2d at 506.

Here Plaintiff does not make sufficient allegations to bring a *Caremark* claim. Plaintiff claims that all of the Committees met on a regular basis. (Am.Compl.¶ 116.) Additionally, as discussed previously, Plaintiff fails to make any particularized allegations regarding a board member's specific knowledge of wrongdoing, nor does the complaint plead that any of the Directors themselves engaged in illegal activities. Mere assumptions and general conclusory allegations are not sufficient to meet the particularity requirement.

Therefore, for purposes of this discussion, the Court finds that Plaintiff has made a sufficient showing that only Directors Foley, and Willey are interested. The Court finds that Plaintiff has failed to show that Directors Imparato, Heasley, Koll, Thompson, Lane, Davis, Christensen, Lyon and Farrell are interested. The court must now look to seek if any of the remaining directors lack independence from Foley and Willey.

### B. Directors Lacking Independence

### 1. Allegations in the Complaint

Plaintiff makes allegations regarding the business, professional and personal re-

lationships between the Directors in an attempt to show that the they lacked independence from one another. The complaint includes only the following specific allegations regarding independence: [6]

1. Lane is not independent from Foley and Willey because they are long-time business associates, serving together on the board of CKE Restaurants, Inc. (Am. Compl.¶ 116.)

2. Farrell is beholden to the entire Board because the entire Board agreed to purchase Chicago Title. Farrell had been a director of Chicago Title from June 1999 until September 2000. Because of this action, Plaintiff claims that Farrell will not take action against the remainder of the Board. (Am.Compl.¶ 116.)

3. Defendants Thompson, Land, Christensen, Imparato, Koll, Lyon, Farrell, Heasley and Davis lack independence because they have an interest in safeguarding substantial compensation for their service on the Board. (Am.Compl.¶ 116.)

### 2. Discussion

The Court finds that Plaintiff has failed to properly allege that any Outside Directors lack independence from Foley and Willey. The presumption is that the Directors are independent and faithful to their fiduciary duties. *Aronson*, 473 A.2d at 812. Thus an allegation of mere membership on the Board is not sufficient to plead lack of independence. Directors lack independence when they are "beholden to [an] interested director or so under the influence of [an interested director] that their discretion would be sterilized." *Rales*, 634 A.2d. at 936. The complaint must state with particularity that a rela-

---

[6]. Because only Defendants Foley and Willey have been deemed "interested," the Court will only examine the relationships between "interested" and "uninterested" Directors.

tionship "is so close that the director's independence may *reasonably* be doubted. The doubt might arise because of . . . a particularly close or intimate personal or business affinity or because of evidence that in the past the relationship caused the director to act in non-independently vis a vis an interested director." *Beam,* 845 A.2d at 1051. Plaintiff's allegations fail to meet this standard. Plaintiff's claims regarding Defendants Lane and Farrell do not plead with particularity the reasons that they are beholden to Willey and Foley, facts suggesting an particularly close business affinity, or any evidence of past actions which would bring independence into question. However, even if the Court were to find that Land and Farrell lack independence, Plaintiff has still failed to make a proper showing that a *majority* of the board is interested and lacks independence.

▮ Finally, Plaintiff alleges that the Board members lack independence because they receive compensation for their service. However, receipt of customary director compensation does not excuse demand. *Grobow v. Perot,* 539 A.2d 180, 188 (Del.1988), *overruled on other grounds by Brehm,* 746 A.2d 244. Here, Plaintiff does not allege that the board members compensation is outside the norm, and thus this allegation does not show a lack of independence.

### III

The Court finds that Plaintiff has failed to plead demand futility with proper particularity. Plaintiff does not make a sufficient showing that a majority of the Board Members were interested and lacked independence at the time of the filing of the Complaint. Therefore, Plaintiff was required to make a demand on the Board before filing his complaint. Because demand futility has not been sufficiently al-

leged, the Amended Complaint is dismissed as to Fidelity as well as to the Individual Defendants. The Court will not consider the Individual Defendant's Motion to Dismiss (Dkt. 24), but will deny it as moot.

The Court will allow Plaintiff the opportunity to Amend his Complaint in order to more properly plead demand futility. Plaintiff has thirty (30) days to amend his complaint. Accordingly it is **ORDERED**:

1. Nominal Defendant Fidelity National Financial's Motion to Dismiss Plaintiff's First Complaint (Dkt. 12) is **DENIED** as moot.

2. Individual Defendants' Motion to Dismiss Plaintiff's First Complaint (Dkt. 15) is **DENIED** as moot.

3. Nominal Defendant Fidelity National Financial's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 23) is **GRANTED** without prejudice.

4. Individual Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt.24) is **DENIED** as moot.

5. Plaintiff has thirty (30) days to amend his complaint.